**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA BEVINS<br><br>v.<br><br>COLGATE-PALMOLIVE, CO.<br><br>and<br><br>BJ'S WHOLESALE CLUB, INC. | CIVIL DIVISION<br><br>No. 2:25-cv-00576 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT COLGATE-PALMOLIVE, COMPANY'S MOTION TO DISMISS**

Plaintiff Patricia Bevins, by and through undersigned counsel, respectfully submits this Opposition to Defendant Colgate-Palmolive, Company's ("Colgate") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Plaintiff's Complaint alleges sufficient factual matter, accepted as true, to state plausible claims for relief under Pennsylvania law for violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), negligence, breach of express warranty, and products liability. Accordingly, the Court should deny Colgate's Motion in its entirety.

I.    **MATTER BEFORE THE COURT AND FACTUAL BACKGROUND**

Plaintiff Patricia Bevins brings this action against Colgate-Palmolive, Company and BJ's Wholesale Club, Inc., alleging injuries sustained from using Fabuloso cleaning products contaminated with Pseudomonas aeruginosa, a dangerous bacterium. The Complaint asserts claims for violation of the UTPCPL (Count I), negligence (Count II), breach of express warranty (Count III), and products liability (Count IV), stemming from Colgate's deceptive marketing,

1

defective product design and manufacture, and failure to warn of known risks. Colgate moves to dismiss, arguing Plaintiff lacks standing under the UTPCPL, fails to plead use of a defective product or proximate causation for negligence and products liability, and cannot sustain a breach of warranty claim due to lack of privity and insufficient allegations of an express warranty.

Plaintiff's Complaint, however, pleads sufficient facts to survive dismissal. Plaintiff has standing under the UTPCPL as an intended user and third-party beneficiary of the product purchased by her employer for her use. The Complaint plausibly alleges that she used a recalled Fabuloso product in January 2023, during the recall period, and suffered injuries consistent with bacterial exposure, satisfying the pleading requirements for negligence and products liability. Finally, Plaintiff states a breach of express warranty claim by identifying Colgate's affirmations of safety on product packaging, upon which she relied as an intended user. Accepting these allegations as true, as required at this stage, the Court should deny Colgate's Motion.

## II.  QUESTION PRESENTED

Has Plaintiff pled facts sufficiently to support her claims for relief and survive dismissal?

***Suggested Answer: Yes***

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff,

disregarding legal conclusions unsupported by facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Third Circuit employs a three-step analysis: (1) identify the elements of each claim; (2) disregard conclusory statements; and (3) determine whether the remaining factual allegations plausibly suggest entitlement to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

At this stage, the court does not assess the likelihood of success but whether the complaint "raise[s] a reasonable expectation that discovery will reveal evidence" supporting the claims. *Twombly*, 550 U.S. at 556. Detailed evidentiary proof is not required; rather, the plaintiff need only provide "enough facts to raise a reasonable expectation" of liability. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Applying this standard, Plaintiff's Complaint meets the threshold for plausibility across all counts.

### III.  ARGUMENT

#### A.  Plaintiff Has Standing to Assert a UTPCPL Claim as an Intended User and Third-Party Beneficiary

Colgate argues that Plaintiff lacks standing under the UTPCPL because she did not purchase the Fabuloso product and used it for commercial, not personal, purposes. Def.'s Mem. at 8-9. This argument mischaracterizes the Complaint and Pennsylvania law. Plaintiff has standing as an intended user and third-party beneficiary of the product purchased by her employer for her specific use, and the Complaint plausibly alleges reliance on Colgate's deceptive practices.

##### 1. Plaintiff's Status as an Intended User/Third-Party Beneficiary Confers Standing

The UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" due to deceptive practices. 73 Pa. Stat. Ann. § 201-

9.2(a). While the statute requires a purchase, Pennsylvania courts interpret it broadly to protect consumers and intended users harmed by unfair trade practices, even if they did not personally buy the product. *See Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885, 894 (2007) (emphasizing the UTPCPL's remedial purpose to protect the public from deceptive practices).

Here, Plaintiff alleges that her employer purchased Fabuloso from BJ's Wholesale Club for her use in performing cleaning services, and she relied on Colgate's representations that the product was safe. Compl. ¶¶ 6, 19, 43, 62. Specifically, the Complaint states: "Because Plaintiff was an intended user of the household product, she has a direct claim under the UTPCPL, although she did not purchase the product herself, she is a third party beneficiary as an employee/agent of the person who purchased it for the specific purpose for plaintiff to use it and benefit from." Id. ¶ 62. These allegations establish Plaintiff as an intended beneficiary of the transaction, injured by Colgate's omission of Pseudomonas aeruginosa from the product labeling—a deceptive act under 73 Pa. Stat. Ann. § 201-2(4)(v), (vii), (xxi) (prohibiting misrepresentations of goods' contents and failure to disclose material defects).

Colgate's reliance on *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. Ct. 1990), is misplaced. In *Valley Forge*, the court denied standing to a condominium association purchasing insulation for commercial resale, not personal use. *Id.* at 648. Here, Plaintiff's employer purchased Fabuloso for her direct use in cleaning, not resale, and Plaintiff suffered personal injuries from that use. Compl. ¶¶ 49-52. This aligns with the UTPCPL's focus on protecting end-users harmed by deceptive practices, not merely purchasers.

## 2. The Product's Use Falls Within the UTPCPL's Scope

Colgate asserts the product was used for "commercial" purposes, not "personal, family, or household" use, because Plaintiff used it in her part-time cleaning job. Def.'s Mem. at 8. However, the Complaint describes Fabuloso as a "household cleaning product" used for "light residential and commercial cleaning services," implying its primary purpose aligns with household use. Compl. ¶¶ 20, 25, 49. The UTPCPL examines the product's intended purpose at purchase, ***not its ultimate application***. See *Valley Forge*, 574 A.2d at 648. Fabuloso is marketed as a household cleaner, and Plaintiff's employer purchased it from a consumer retailer (BJ's) for her to use in a manner consistent with its labeling—cleaning surfaces. Compl. ¶¶ 6, 25. Whether the use was partly commercial is a factual question inappropriate for resolution on a motion to dismiss.

## 3. The Class Action Release Does Not Bar Plaintiff's Claim

Colgate argues that a class action release in *Patora v. Colgate-Palmolive, Co.*, Case No. 7:23-cv-01118-VB (S.D.N.Y. Apr. 25, 2024), bars Plaintiff's claim if she had purchased the product. Def.'s Mem. at 9. Since Plaintiff did not purchase Fabuloso, this release is irrelevant. Compl. ¶ 6. Moreover, Colgate provides no evidence that Plaintiff opted into or was bound by the *Patora* settlement, and such extrinsic matters are improper at the pleading stage unless integral to the Complaint. See *Taha v. INS*, 828 F. Supp. 362, 364 n.6 (E.D. Pa. 1993). The Complaint does not reference *Patora*, rendering this argument premature.

Defendants' argument is circular in that in one sense it argues that the UTPCL does not apply to Plaintiff since she did not purchase the product; but at the same time Defendant argues that Plaintiff is bound by a release which she is not a party to, and which released only UTPCL

claims of those included in the Class. Plaintiff cannot be bound by a release that releases UTPCL claims if, like Defendants' claim, she had no UTPCL claims to release. Thus, Plaintiff's allegations of reliance on Colgate's deceptive omissions as an intended user suffice to confer UTPCPL standing, and Count I should proceed.

### B. Plaintiff Sufficiently Pleads Negligence and Products Liability Claims Based on Use of a Defective Product and Proximate Causation

Colgate contends that Plaintiff's negligence (Count II) and products liability (Count IV) claims fail because she does not plead use of a recalled Fabuloso product or that it proximately caused her injuries. Def.'s Mem. at 5-8. The Complaint, however, provides sufficient factual allegations to establish both elements at the pleading stage.

#### 1. Plaintiff Plausibly Alleges Use of a Defective Product

For strict products liability under Pennsylvania law, Plaintiff must show: (1) the product was defective; (2) the defect existed when it left the defendant's control; and (3) the defect proximately caused her injury. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966). Negligence requires: (1) a duty; (2) breach; (3) causation; and (4) damages. *Tinch v. Video Indus. Servs., Inc.*, No. 1712 EDA 2018, 2019 WL 1396975, at *3 (Pa. Super. Ct. Mar. 27, 2019). Both claims hinge on Plaintiff's use of a defective product.

The Complaint alleges that Plaintiff used Fabuloso in January 2023, during the recall period (December 14, 2022, to January 23, 2023), purchased from BJ's by her employer. Compl. ¶¶ 5-6, 49. It asserts the product contained Pseudomonas aeruginosa due to Colgate's defective manufacturing processes, as evidenced by the February 8, 2023 recall. Id. ¶¶ 8, 12, 34, 37, 82-89.

In the Complaint, Plaintiff references "Exhibit A,"[1] documentation from the purchaser, as the only evidence of the specific bottle or lot, though not attached, and confirms the timing of her use aligns with the recall. Id. ¶ 5. These allegations plausibly suggest she used a recalled, defective product, as the recall itself acknowledges a risk of bacterial contamination from inadequate preservatives. *See* Def.'s Mem. at 1.

Colgate demands specific details (e.g., UPC codes, lot numbers), but such precision is not required at the pleading stage. *See Phillips, 515 F.3d at 234* (plaintiff need not plead all evidentiary details). The Third Circuit recognizes that strict liability extends to foreseeable users, not just purchasers, bolstering Plaintiff's claim as an intended user. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 53 (3d Cir. 2009). As such, the Complaint sufficiently identifies the defective

---

[1] Defendant suggests the Complaint as filed did not contain Exhibit "A". Apparently, Exhibit "A" was omitted by mistake or typographical error when filed, but is included here as Exhibit "A". Importantly though, Defendant neglects to inform the Court that prior to any motions being filed, Plaintiff received correspondence from Defendant (Exhibit "B") which requested certain documentation and a demand for settlement. In response, Plaintiff provided same to Defendant via email long before the Complaint was ever filed. Exhibit "C". That documentation contained within it, certain photos of receipts from BJs proving the purchase of the products. Those same photos of receipts are the Complaint's Exhibit "A". Plaintiff then received a call from defense counsel who indicated that they received the documents but asked for plaintiff to send over original images of the receipts so they could be more closely inspected, which Plaintiff then did. All of this occurred prior to the Complaint even being filed, and thus, Defendant knows exactly what the Complaint refers to in its reference to "Exhibit A" and any argument concerning this is truly without merit as Defendant has had the documentation which would provide them with the information needed to defend the claim; and which is specifically what defendant, through counsel, asked Plaintiff for, for the specific purpose of matching the products.

Plaintiff does not know if the receipts enable Defendants to determine the specific products associated with particular defective batches of product, but can only assume that it does, since, after all, Defendant's counsel requested it for this purpose. If the issue is that Defendants cannot at this time prove that the products plaintiff used were part of the batch of defective products, despite production of the receipts, then additional discovery is needed so the parties can make this determination, but this does not support a dismissal based on plaintiff's alleged failure to identify the defective product. Clearly, Plaintiff identified Faboloso household cleaned which contained a certain harmful bacterium in it. Whether the specific bottles used were part of the batch of bottles known to Defendant to be defective or not doesn't mean that Plaintiff failed to identify the defective product.

Defendant can defend the claim by suggesting Plaintiff cannot prove that the particular bottles she used were from the batch of defective products, but that is not what Defendant complains of here, rather, it claims it doesn't know what the product is that plaintiff claims is defective even though the Complaint literally identifies the specific bacteria and household cleaner used. Thus, it is very clear that Plaintiff claims her bottle of Faboloso was defective and contained a harmful bacterium, which in turn caused her injuries and damages. Discovery will now prove whether that bottle she used was part of the known batch of defective products, or perhaps part of another batch of defective products that perhaps Defendant is not yet aware of.

product as a Faboloso Household cleaner which contained a certain harmful bacterium. Further discovery can confirm whether those particular bottles used by Plaintiff contain a certain UPC or Lot number which corresponds with the batch of defective products that Defendant confirms their awareness of through issuance of a recall. Ultimately, the issue is not whether this bottle of Faboloso is from the batch of products Defendant knows to be defective; rather, the ultimate issue is whether this Fabolosu bottle used by Plaintiff contained a harmful bacterium. It is possible that more batches are contaminated that Defendant does not know about.

Furthermore, Plaintiff has provided all the detail she possibly can to Defendant concerning the potential UPC Codes and/or lot numbers by sending the BJs receipts and identifying in her Complaint where the products that caused her injuries were purchased and she identifies who purchased them. Discovery from plaintiff's coworker who purchased the product can further specify the time and date and specific location of BJS, and further discovery from BJS can determine when that product was stocked at BJS and from which order it came from, which can then be cross referenced with the records of Colgate Palmolive to determine when that particular shipment to BJS was delivered, and from where it was delivered, where it was manufactured, and when; which can then be explored further to determine if this was the same location or involved the same manufacturing process which led to the known and admitted contamination of the product. This is the purpose of discovery, but Plaintiff has set forth all the details she knows of which are sufficient to enable defendants to prepare an adequate defense.

### 2. Plaintiff Plausibly Alleges Proximate Causation

Colgate argues Plaintiff fails to link her injuries (itching, burning, rash) to Pseudomonas aeruginosa, noting that she treated her injuries with steroid creams rather than antibiotics. Def.'s Mem. at 7-8. However, the Complaint alleges symptoms consistent with bacteriuml exposure—

painful itching, burning, irritation, and a persistent rash—beginning after using Fabuloso in January 2023. Compl. ¶¶ 49-50. It cites medical literature identifying Pseudomonas aeruginosa as causing skin infections via contact, supporting a plausible causal nexus. Id. ¶¶ 8, 11, 35 & nn.2, 8.

While not specified, due to no need being required for such specificity in the Complaint, to the extent the Court finds it helpful; Plaintiff's medical providers treated Plaintiff for her ***symptoms***, by prescribing steroidal creams, and perhaps maybe initially thought her symptoms were caused by an allergic reaction, since after all they couldn't know for sure of her exposure to such a bizarre bacterium such as the one Defendant put in their products. Importantly, skin related symptoms from bacteriuml exposure such as the ones complained of; burning, swelling, itching, and discoloration; can be and often are treated with steroidal creams which help reduce inflammation and swelling which is often the source of pain and itching and burning. Thus, the treatment with steroidal creams was to treat plaintiff's symptoms. Moreover, the source and cause of these particular symptoms certainly can be caused by exposure to harmful bacterium, such as the one at issue, but also, admittedly from allergic reactions. However, given that plaintiff continued to suffer and still does despite not being exposed to any potential allergen only further supports that plaintiff's particular symptoms were caused by exposure to the bacterium and not from any prolonged exposure to an allergen. While Plaintiff did not plead in her Complaint the specifics of her medical providers' diagnosis of her injuries and symptoms, nor the specifics of any medical provider's opinion regarding the etiology of those injuries and symptoms, she is not required to. Moreover, to the extent Plaintiff had not, at the time early on in her treatment course, been specifically diagnosed with any particular degree of specificity; the lack of such a bacterium diagnosis at the time of her presentation to the Emergency Room may

9

merely reflect the medical community's general unawareness of Fabuloso's risks at the time, not the absence of infection, and in such a situation they would treat the symptoms with general treatments that may perhaps treat both etiologies; which is exactly what happened here. Id. ¶ 51. When you compare to cases where the court found a lack of facts connecting a product to an injury, those complaints failed to plead any proximal, occasional(geographic/use), or symptomological facts; where here, all of those are present. *Compare Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 762 (E.D. Pa. 2016). Here, Plaintiff ties her symptoms to Fabuloso and the particular bacterium within it, and has explained that her injuries began after using it and she has explained that she continued to have symptoms despite not being exposed to any allergen that could have alternatively be the cause.

Proximate cause only requires the breach to be a "substantial factor" in bringing about injury, which is always a question of fact, and which is typically reserved for the jury unless no reasonable inference supports causation. *Tinch*, 2019 WL 1396975, at *4. Given the Complaint's allegations of timing, product defect, and symptomology, causation is plausible, and Count II and IV should survive.

### C. **Plaintiff States a Valid Breach of Express Warranty Claim as a Third-Party Beneficiary Relying on Specific Affirmative Statements**

Colgate argues that Plaintiff's breach of express warranty claim (Count III) fails due to lack of privity and failure to identify an express warranty. Def.'s Mem. at 9-11. The Complaint, however, alleges sufficient facts to sustain this claim under Pennsylvania law.

#### 1. **Plaintiff Can Assert a Claim as a Third-Party Beneficiary**

Under Pennsylvania law, an express warranty arises from "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the

bargain." 13 Pa. Cons. Stat. Ann. § 2313(a)(1). While privity typically exists between buyer and seller, third parties may enforce warranties if: (1) the seller intends to extend the specific warranty to them; and (2) the third party is aware of the specific terms of the warranty. *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1246 (Pa. Super. Ct. 2004).

Plaintiff alleges she was an intended user of Fabuloso, purchased by her coworker/employer for use by Plaintiff in connection with residential cleaning, and she alleges that she used that product for said purpose. The Complaint further specifies that in using the product for such purpose, she knew of and specifically relied on Defendants' warranties and affirmations which Defendants included on the product's packaging. Specifically, Plaintiff's Complaint explains that the packaging indicated that the product was "safe for use" and that it was intended as a household cleaning product. Compl. ¶¶ 6, 19, 71, 74-75. The Complaint asserts: "Defendant Colgate Palmolive Co. provided Plaintiff with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain Pseudomonas aeruginosa." *Id.* ¶ 71. As a foreseeable user handling the product daily, Plaintiff falls within the class Colgate intended to reach with its consumer-facing representations. *See Goodman*, 849 A.2d at 1246 (intent inferred from objective circumstances). Her reliance on the label's safety assurances satisfies the awareness requirement, making privity unnecessary. *Id.*

Furthermore, considering how the product in question is marketed and distributed and labeled as a household cleaning product, this necessarily invokes the necessary inference in the mind of the Plaintiff that the product does not contain any harmful ingredients that would cause the injuries and damages she suffers from. As such, Plaintiff has pled facts which support that Defendant made an express warranty that the product was safe for use as a household cleaning product but that it was not due to containing certain harmful bacterium.

### 2. Plaintiff Identifies Specific Affirmative Statements

Colgate claims Plaintiff's allegation of a "generic promise" of safety is insufficient. Def.'s Mem. at 11. However, the Complaint specifies that Colgate's packaging omitted Pseudomonas aeruginosa from the ingredients list, affirmatively representing the product as safe and free of harmful bacterium. Compl. ¶¶ 9-10, 16-17, 71-72. This is not a vague puffing statement but a material affirmation about the product's composition, relied upon by Plaintiff and her employer. *Id.* ¶ 75. Pennsylvania law distinguishes actionable warranties from general opinions; a promise of safety tied to ingredient disclosure is specific enough to constitute an express warranty. *See Burton v. Danek*, No. 95-5560, 1997 WL 436713, at *8 (E.D. Pa. July 31, 1997) (warranty claim survived where plaintiff alleged reliance on specific safety representations).

Here, the warranty of "safe for use" and labeling it a "household cleaning product" are tied to the specific ingredient disclosure of the product, i.e. it does not contain any harmful bacterium in the ingredients. Although the ingredient list did not identify this bacterium, it was nonetheless contained in the bottle, thus making the product not "safe for use" and making the product something other than a "household cleaning product". As such, the Complaint contains the necessary facts needed to establish a warranty. As to breach, Defendant breached this warranty by selling a product which was not safe for use and which was not a household cleaning product as the product it sold (to BJs, who sold it to plaintiff's co-worker, which was then used by Plaintiff) contained ingredients (i.e. the harmful bacterium in question) which was not identified on the bottle's ingredients list and which was nonetheless present in the bottle of Faboloso used by Plaintiff. As such, Defendants failed to make good on the assurances contained in their marketing of and labeling of the product, breached this warranty and in doing so caused the plaintiff's injuries and damages. Compl. ¶¶ 76, 80. Count III is thus adequately pleaded.

## IV.　CONCLUSION

Plaintiff's Complaint states plausible claims under the UTPCPL, negligence, products liability, and breach of express warranty. She has standing as an intended user under the UTPCPL, plausibly alleges use of a defective Fabuloso product causing her injuries, and identifies an actionable express warranty as a third-party beneficiary. Accepting these allegations as true, discovery is warranted to substantiate her claims. Accordingly, Plaintiff respectfully requests that the Court deny Defendant Colgate-Palmolive, Company's Motion to Dismiss in its entirety.

Respectfully submitted,
**DEFINO LAW ASSOCIATES, P.C.**

_____
MICHAEL ANTHONY DEFINO, ESQ.
VINCENT ANTHONY DEFINO, ESQ.
NICHOLAS L. PALAZZO, ESQ.
*Attorneys for Plaintiff*

## CERTFICATE OF SERVICE

I, the undersigned, hereby state that the within Opposition to Motion to Dismiss has been electronically filed on or about March 17th 2025 and electronically served on all defendants through their counsel of record via e notification of the within filing upon filing same with the Court.

Respectfully Certified,
**DEFINO LAW ASSOCIATES, P.C.**

_____
MICHAEL ANTHONY DEFINO, ESQ.
VINCENT ANTHONY DEFINO, ESQ.
NICHOLAS L. PALAZZO, ESQ.
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| PATRICIA BEVINS | CIVIL DIVISION |
|---|---|
| Plaintiff, | No. 2:25-cv-00576 |
| v. | |
| COLGATE-PALMOLIVE, CO. and BJ'S WHOLESALE CLUB, INC. | |
| Defendants. | |

**ORDER**

**And now** on this, _____ day of _____2025, after consideration of Defendants' Motion to Dismiss, and Plaintiff's Response in Opposition thereto, it is hereby **ORDERED AND DECREED** that said **Motion** is **DENIED**.

_____

## APPENDIX/TABLE OF EXHIBITS

A. Exhibit "A", Plaintiff's Exhibit "A" to the Complaint which includes photos of receipts of purchase of the products in question from BJs

B. Exhibit "B", Defendant's Correspondence to Plaintiff Requesting Documentation

C. Exhibit "C", Plaintiff's Response Providing Documentation, BJs Receipts

D. Exhibit "D", Plaintiff's Filed Complaint