## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PATRICIA BEVINS | CIVIL DIVISION |
|---|---|
| v. | No. 2:25-cv-00576 |
| COLGATE-PALMOLIVE, CO. | |
| and | |
| BJ'S WHOLESALE CLUB, INC. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT BJ'S WHOLESALE CLUB, INC.'s MOTION TO DISMISS

Plaintiff Patricia Bevins, by and through undersigned counsel, respectfully submits this Opposition to Defendant BJ's Wholesale Club, Inc.'s ("BJs" or "Defendant") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Plaintiff's Complaint alleges sufficient factual matter, accepted as true, to state plausible claims for relief under Pennsylvania law for violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), negligence, breach of express warranty, and products liability. Accordingly, the Court should deny Defendant's Motion in its entirety.

## I.     MATTER BEFORE THE COURT AND BACKGROUND FACTS

Plaintiff Patricia Bevins brings this action against Colgate-Palmolive, Company and BJ's Wholesale Club, Inc., alleging injuries sustained from using Fabuloso cleaning products contaminated with Pseudomonas aeruginosa, a dangerous bacterium. The Complaint asserts claims for violation of the UTPCPL (Count I), negligence (Count II), breach of express warranty

(Count III), and products liability (Count IV), stemming from Defendants' deceptive marketing, defective product design and manufacture, and failure to warn of known risks. BJ's moves to dismiss, arguing Plaintiff's Complaint fails to assert a claim for negligence and claims the Complaint fails to allege a duty and causation and argues that the Complaint fails to plead a claim for relief under the UTPCPL because Plaintiff did not purchase the products for her personal use.

Plaintiff's Complaint, however, pleads sufficient facts to survive dismissal. Plaintiff has standing under the UTPCPL as an intended user and third-party beneficiary of the product purchased by her employer for her use. The Complaint plausibly alleges that she used a recalled Fabuloso product in January 2023, during the recall period, and suffered injuries consistent with bacterial exposure, satisfying the pleading requirements under the UTPCL and products liability. As to negligence, Plaintiffs' allege that Defendant BJs knowingly sold products to consumers to be used consumers, such as Plaintiff despite the fact that Defendant knew or should have known that many of the Faboloso products it was selling were likely contaminated with a certain harmful bacterium.  Despite the manufacturer's acknowledgement of the contamination, BJs continued to stock its shelves with these defective products despite being on notice of the contamination and defective nature of and harmful risks associated with those products.

## II.    **QUESTION PRESENTED**

Has Plaintiff pled her Complaint sufficiently to establish her claims to relief and survive dismissal?

***Suggested Response: Yes***

III.     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff, disregarding legal conclusions unsupported by facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Third Circuit employs a three-step analysis: (1) identify the elements of each claim; (2) disregard conclusory statements; and (3) determine whether the remaining factual allegations plausibly suggest entitlement to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

At this stage, the court does not assess the likelihood of success but whether the complaint "raise[s] a reasonable expectation that discovery will reveal evidence" supporting the claims. *Twombly*, 550 U.S. at 556. Detailed evidentiary proof is not required; rather, the plaintiff need only provide "enough facts to raise a reasonable expectation" of liability. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Applying this standard, Plaintiff's Complaint meets the threshold for plausibility across all counts.

III.     **ARGUMENT**

A.  **Plaintiff's complaint plausibly and sufficiently pleads a claim for relief under the UTPCL and she has Standing to Assert a UTPCPL Claim as an Intended User and Third-Party Beneficiary**

Both Defendants argue that Plaintiff lacks standing under the UTPCPL because she did not purchase the Fabuloso product and used it for commercial, not personal, purposes. This argument

mischaracterizes the Complaint and Pennsylvania law. Plaintiff has standing as an intended user and third-party beneficiary of the product purchased by her employer for her specific use.

### 1.  Plaintiff's Status as an Intended User/Third-Party Beneficiary Confers Standing

The UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" due to deceptive practices. 73 Pa. Stat. Ann. § 201-9.2(a). While the statute requires a purchase, Pennsylvania courts interpret it broadly to protect consumers and intended users harmed by unfair trade practices, even if they did not personally buy the product. *See Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885, 894 (2007) (emphasizing the UTPCPL's remedial purpose to protect the public from deceptive practices).

Here, Plaintiff alleges that her employer purchased Fabuloso from BJ's Wholesale Club for her use in performing cleaning services, and she relied on Defendants' representations that the product was safe for its intended use as a household cleaner, and was reasonable in inferring that it would not contain any harmful bacteria although it in fact did. Compl. ¶¶ 6, 19, 43, 62. Specifically, the Complaint states: "Because Plaintiff was an intended user of the household product, she has a direct claim under the UTPCPL, although she did not purchase the product herself, she is a third party beneficiary as an employee/agent of the person who purchased it for the specific purpose for plaintiff to use it and benefit from." Id. ¶ 62. These allegations establish Plaintiff as an intended beneficiary of the transaction, injured by Defendants' failure to warn of the presence Pseudomonas aeruginosa in the product labeling—a deceptive act under 73 Pa. Stat. Ann. § 201-2(4)(v), (vii), (xxi) (prohibiting misrepresentations of goods' contents and failure to disclose material defects).

4

### 2.  The Product's Use Falls Within the UTPCPL's Scope

Defendants assert the product was used for "commercial" purposes, not "personal, family, or household" use, because Plaintiff used it in her part-time cleaning job. However, the Complaint describes Fabuloso as a "household cleaning product" used for "light residential and commercial cleaning services," implying its primary purpose aligns with household use. Compl. ¶¶ 20, 25, 49. The UTPCPL examines the product's intended purpose at purchase, ***not its ultimate application***. See *Valley Forge*, 574 A.2d at 648. Fabuloso is marketed as a household cleaner, and Plaintiff's employer purchased it from a consumer retailer (BJ's) for her to use in a manner consistent with its labeling—cleaning surfaces. Compl. ¶¶ 6, 25. Whether the use was partly commercial is a factual question inappropriate for resolution on a motion to dismiss.

As Plaintiff has pointed out in her response to Colgate's motion, the PA Superior Court has focused on the ultimate household use (or not) when distinguishing between what garner's the Act's protection and what doesn't. *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. Ct. 1990). In *Valley Forge*, the court denied standing to a condominium association purchasing insulation for commercial resale, not personal use. *Id.* at 648. Here, Plaintiff's employer purchased Fabuloso for her direct use in cleaning, not resale, and Plaintiff suffered personal injuries from that use. Compl. ¶¶ 49-52. This aligns with the UTPCPL's focus on protecting end-users harmed by deceptive practices, not merely purchasers. Thus, where plaintiff buys the product for use and intends to use it in a household way and does, it doesn't make it purpose, such as here, but does so in connection with a commercial benefit, the intended purpose

B.  **Plaintiff Sufficiently Pleads Negligence including Duty and causation**

Colgate contends that Plaintiff's negligence (Count II) and products liability (Count IV) claims fail because she does not plead use of a recalled Fabuloso product or that it proximately caused her injuries. Def.'s Mem. at 5-8. The Complaint, however, provides sufficient factual allegations to establish both elements at the pleading stage.

1. **BJs owes Plaintiff a duty**.

"To determine whether to impose a duty, Pennsylvania law looks to a five-factor test: '(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.'" Zaftr Inc., 2023 WL 349256, at *29 (quoting Bilt-Rite Contractors, Inc. v. Architectural Studio, 581 Pa. 454, 866 A.2d 270, 281 (2005)).

In support of its Motion, Defendant relies solely on *Fike v. Glob. Pharma Healthcare Priv., Ltd.*, 741 F. Supp. 3d 265, 280 (E.D. PA 2024). While the facts in both that and this case are similar, Defendant overlooks how the *Fike* Court only granted Amazon's Motion in part, and denied other parts and allowed the Complaint to survive on several grounds. Particularly, the Court explained that the Claims of Negligence and Products liability, ***related only to a post sale duty to recall***, were dismissed. The court also dismissed claims for express warranty relating to Amazon since they made no express warranties (the warranty claims proceeded still against the manufacturer, but not the seller, Amazon). Importantly, the *Fike* Court denied Amazon's motion to dismiss plaintiff's UTPCL claims. Also, in *Fike*, there was no motion to dismiss the products liability claims so it is not applicable to that issue.

As to the negligence claims that were dismissed in *Fike*, the Court explained that for the particular situation where a buyer is buying products from Amazon through the internet, and premises claims on Amazon's failure to issue a recall after it sold the products to the ultimate users of it, this was not sufficient to support a claim of negligence. Thus, the holding was particularly narrow and certainly did not stand for the proposition that a third-party seller never owes a duty to a user of a product that it has sold.

Rather, the Court performed a detailed analysis of PA's "duty" test, applying five separate factors, and ultimately held that certain factors favored Amazon and thus supported a finding of no duty in that specific situation. The Court stressed the fact that the parties were doing business over the internet with Amazon acting as merely the "middleman" – such is not the case here. The Court explained also how social utility favored Amazon as "shipping of goods is an important part of any economy". However, the case sub judice does not involved shipping of goods.

Critically though, the *Fike* Court found that there was little foreseeability of harm based on the fact that there was nothing in that complaint which supported how Amazon could have perceived that the drops it was selling were causing infection symptoms. In other words, there was not enough information in the Complaint which would suggest that Amazon knew or should have known that there was a problem with the eye drops complained of in *Fike*. Thus, the court held that any claim based on Amazon's failure to issue its own recall failed because there was not enough pled to suggest Amazon knew or should have known of the dangers. However, in this case, Plaintiff's Complaint alleged that BJs and Colgate knew that the products were contaminated, and that Colgate issued a recall which BJs knew about. Yet still, BJs continued to sell the defective Faboloso products.

Also, while most of the factors favored Amazon, the last one, promotion of the public interest by protecting the public from hazardous and dangerous products favored *Fike*. In so finding, the *Fike* Court explained that "[i]mposing a duty on shippers to inspect their shipments and ensure the contents will not harm consumers could provide an extra line of defense for the purchaser." *Fike v. Glob. Pharma Healthcare Priv., Ltd.*, 741 F. Supp. 3d 265, 277.

Summarily, the factors that favored Amazon were premised on Amazon's role as an important shipper of needed goods to the US consumers, and Amazon's role as an integral and necessary component of our economy. However, none of those facts are analogous to this case. What is analogous though, is the one factor that favored *Fike*, i.e. protection of the public interest and safety of the public, which likewise should favor Plaintiff here.

Most critical though, the *Fike* Court focused on the lack of foreseeability, where Plaintiff was alleging Amazon should have known about the contamination because of certain customer complaints. The Court held this was not sufficient to support a duty to issue a recall post sale on the non-manufacturer. When compared to defendants here, the recall already occurred and was issued by the manufacturer, and BJS was well aware of it. It easily could have checked the stock it had purchased from Colgate, compared the sku and UPC numbers with Colgate's data about which of its batches were contaminated, and then could have easily removed from its shelves any Faboloso products which came from that contaminated production line. Had BJs taken these relatively easy steps, it could have confirmed which of its products were likely contaminated and removed them, and continued to sell the ones which likely weren't. This would not have placed any significant burden on BJs and was a reasonable ask considering it had ***actual knowledge*** that Faboloso issued a recall and many of its products were defective. Instead of taking these easy

8

steps, BJs did nothing, and failed to check, and had they done so, then Plaintiff would not have been injured.

Thus, while the particular harm was difficult for Amazon to foresee in *Fike*, it was easy for BJs to foresee here, since, it actually knew of the recall issued by Colgate whereas Amazon was merely expected to consider a few customer complaints and reviews not a full blown actual recall by the manufacturer.  This is exactly why the *Fike* Court constrained its holding to only dismissing negligence claims which were premised on a "post-sale duty to issue a recall" and allowed all other such negligence claims to proceed.

As such, *Fike* is instructive and persuasive but only to show how different the facts pled here are and how the ones here do support a duty on BJs.

### 2.  **Plaintiff sufficiently pled causation**

Regarding causation, BJs argues that Plaintiff's Complaint fails to link her injuries (itching, burning, rash) to the defective product which contained Pseudomonas aeruginosa.  However, BJs has done nothing to actually develop this argument and the extent of its motion on this issue is one paragraph consisting of only three sentences.

Simply put, the Complaint alleges symptoms consistent with bacterium exposure—painful itching, burning, irritation, and a persistent rash—beginning after using Fabuloso in January 2023. Compl. ¶¶ 49-50. It cites medical literature identifying Pseudomonas aeruginosa as causing skin infections via contact, supporting a plausible causal nexus. Id. ¶¶ 8, 11, 35 & nn.2, 8.

While certainly not required to be specified in the Complaint, plaintiff's medical providers treated plaintiff for her -- ***symptoms*** -- by prescribing steroidal creams, and perhaps maybe

initially thought her symptoms were caused by an allergic reaction, since after all they couldn't know for sure of her exposure to such a bizarre bacterium. Importantly, skin related symptoms from bacterium exposure such as the ones complained of; burning, swelling, itching, and discoloration; can be and often are treated with steroidal creams which help reduce inflammation and swelling which is often the source of pain and itching and burning. Thus, the treatment with steroidal creams was to treat plaintiff's symptoms.

Moreover, the source and cause of these particular symptoms complained of may be caused by exposure to harmful bacterium, such as the one at issue, but also, admittedly from things such as allergic reactions. However, given that plaintiff continued to suffer and still does despite not being exposed to any potential allergen only further supports that plaintiff's particular symptoms were caused by exposure to the bacterium and not from any prolonged exposure to an allergen. While Plaintiff did not plead in her Complaint the specifics of her medical providers' diagnosis of her injuries and symptoms, nor the specifics of any medical provider's opinion regarding the etiology of those injuries and symptoms, she is not required to. Moreover, to the extent Plaintiff had not, at the time early on in her treatment course, been specifically diagnosed with a bacteria infection, this only supports generally how the medical community was unaware of Fabuloso recall and the specific bacteria that contaminated the products; it doesn't equate to an absence of bacterial infection. Id. ¶ 51. *In Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 762 (E.D. Pa. 2016), dismissal was warranted where no facts connected the product to the injury. Here, Plaintiff ties her symptoms to Fabuloso and the particular bacterium within it and has explained that her injuries began after using it and she has explained that she continued to have symptoms despite not being exposed to any allergen that could have alternatively been the cause.

Proximate cause requires the defect to be a "substantial factor" in the injury, a question of fact typically reserved for the jury unless no reasonable inference supports causation. *Tinch*, 2019 WL 1396975, at *4. Given the Complaint's allegations of timing, product defect, and symptomology, causation is plausible and pled sufficiently for both negligence and strict products liability.

### C. A retail seller of a product must live up to the express warranty contained in the packaging or on the label of products it sells and is bound by it. Thus Plaintiff's express warranty claims are sufficiently pled.

Plaintiff incorporates the same response it made to Colgate's motion relating to express warranties and does not repeat them again here for sake of brevity. Further, Plaintiff adds that those warranties are binding on the retail seller even if BJs did not have any role in creating the labels and packaging. *See generally* Hassett v. Dafoe, *74 A.3d 202, 215* (Pa Superior Ct. 2013).

Our Circuit Courts have expressed the breadth of the UCC's implied and expressed warranty protections and has held specifically that those protections apply to all consumers purchasing products from third party retailers, including commercial and noncommercial consumers and purchasers. *Harbourview Yacht Sales, L.L.C. v. Ocean Yachts, 500 F. Supp. 2d 462, 466 (D.N.J. 2007), e.g., Paramount Aviation Corp. v. Gruppo Agusta,* 288 F.3d 67, 71 (3d Cir. 2002)*; Alloway v. General Marine Indus.,* 149 N.J. 620, 695 A.2d 264 (1997)("By providing for **express** and implied **warranties**, the U.C.C. amply protects [**12] all buyers--commercial purchasers and consumers alike--from economic loss arising out of the purchase of a defective product.").

Importantly, in *Harboourview Yacht Sales*, the District Court of New Jersey explained that neither our Circuit Court of Appeals, nor the UCC require any form of specific written warranty for one to apply to not just the manufacturer, but also the retailer.

Thus in Harbourview, like here, the plaintiff was seeking to enforce an express warranty of the manufacturer on a retailer of that product even though the retailer never specifically promised it would honor the manufacturer's express warranty. The warranty was expressed in writing via manufacturer but binding on both. Same should be the case with Plaintiff here.

**D.** **Plaintiff's complaint sufficiently and plausibly supports a claim for damages due to strict products liability and sufficiently pleads causation**

For strict products liability under Pennsylvania law, Plaintiff must show: (1) the product was defective; (2) the defect existed when it left the defendant's control; and (3) the defect proximately caused her injury. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966). Negligence requires: (1) a duty; (2) breach; (3) causation; and (4) damages. *Tinch v. Video Indus. Servs., Inc.*, No. 1712 EDA 2018, 2019 WL 1396975, at *3 (Pa. Super. Ct. Mar. 27, 2019). Both claims hinge on Plaintiff's use of a defective product.

The Complaint alleges that Plaintiff used Fabuloso in January 2023, during the recall period (December 14, 2022, to January 23, 2023), purchased from BJ's by her employer. Compl. ¶¶ 5-6, 49. It asserts the product contained Pseudomonas aeruginosa due to Colgate's defective manufacturing processes, as evidenced by the February 8, 2023 recall. Id. ¶¶ 8, 12, 34, 37, 82-89. In the Complaint, Plaintiff references "Exhibit A," documentation from the purchaser, as the only evidence of the specific bottle or lot, though not attached, and confirms the timing of her use aligns with the recall. Id. ¶ 5. These allegations plausibly suggest she used a recalled, defective product, as the recall itself acknowledges a risk of bacterial contamination from inadequate preservatives. *See* Def.'s Mem. at 1.

As to causation for the products liability claims, Plaintiff incorporates her argument above relating to causation as expressed in the section on negligence above; as the causation

issue is the same for products liability or negligence and the same analysis applies and is not repeated here for purposes of brevity.

## IV.    <u>CONCLUSION</u>

Plaintiff's Complaint states plausible claims under the UTPCPL, negligence, products liability, and breach of express warranty. She has standing as an intended user under the UTPCPL, plausibly alleges use of a defective Fabuloso product causing her injuries, and identifies an actionable express warranty as a third-party beneficiary. Accepting these allegations as true, discovery is warranted to substantiate her claims. Accordingly, Plaintiff respectfully requests that the Court deny Defendant Colgate-Palmolive, Company's Motion to Dismiss in its entirety.

Respectfully submitted,
**DEFINO LAW ASSOCIATES, P.C.**

MICHAEL ANTHONY DEFINO, ESQ.
VINCENT ANTHONY DEFINO, ESQ.
NICHOLAS L. PALAZZO, ESQ.
*Attorneys for Plaintiff*

## <u>CERTFICATE OF SERVICE</u>

I, the undersigned, hereby state that the within Opposition to Motion to Dismiss has been electronically filed on or about March 17th 2025 and electronically served on all defendants through their counsel of record via e notification of the within filing upon filing same with the Court.

Respectfully Certified,
**DEFINO LAW ASSOCIATES, P.C.**

_____
MICHAEL ANTHONY DEFINO, ESQ.
VINCENT ANTHONY DEFINO, ESQ.
NICHOLAS L. PALAZZO, ESQ.
***Attorneys for Plaintiff***

14

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| PATRICIA BEVINS | CIVIL DIVISION |
|---|---|
| Plaintiff, | No. 2:25-cv-00576 |
| v. | |
| COLGATE-PALMOLIVE, CO. and BJ'S WHOLESALE CLUB, INC. | |
| Defendants. | |

**<u>ORDER</u>**

**And now** on this, _____ day of _____ 2025, after consideration of Defendants' Motion to Dismiss, and Plaintiff's Response in Opposition thereto, it is hereby **ORDERED AND DECREED** that said **Motion** is **DENIED**.

_____

## **APPENDIX/TABLE OF EXHIBITS**

A.  Exhibit "A", Plaintiff's Exhibit "A" to the Complaint which includes photos of receipts of purchase of the products in question from BJs

B.  Exhibit "B", Defendant's Correspondence to Plaintiff Requesting Documentation

C.  Exhibit "C", Plaintiff's Response Providing Documentation, BJs Receipts

D.  Exhibit "D", Plaintiff's Filed Complaint