**DEFINO LAW ASSOCIATES, P.C.**
**Nicholas L. Palazzo, Esq.**
**Attorney ID: 309040**
**2541 South Broad Street**
**Philadelphia, PA 19148**
**Tel:  (215) 551-9099**



*Filed and Attested by the*
*Office of Judicial Records*
*31 DEC 2024 03:44 pm*
*B. SMITH*

PATRICIA BEVINS
916 North 46th street
Philadelphia, PA 19131

   v.

COLGATE-PALMOLIVE, CO.
300 Park Avenue, New York City, New
York 10022, U.S.

And
BJ'S WHOLESALE CLUB, INC.
350 Campus Drive
Marlborough, MA 01581

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

**NOTICE**

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL .**
**LAWYER REFERENCE SERVICE**
1101 Market Street, 11th Floor
Philadelphia, PA 19107
Phone: (215) 235-6333

**AVISO**

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta a sentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.
**LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGALSERVICIO DE REFERENCIA LEGAL**
1101 Market Street, 11th Floor
Filadelphia, PA 19107
Telefono: (215) 235-6333

Case ID: 250100031

**DeFINO LAW ASSOCIATES, P.C.**
**Nicholas L. Palazzo, Esq.**
**Attorney ID: 309040**
**2541 South Broad Street**
**Philadelphia, PA 19148**
**Tel: (215) 551-9099**

PATRICIA BEVINS
916 North 46th street
Philadelphia, PA 19131

   v.

COLGATE-PALMOLIVE, CO.
300 Park Avenue, New York City, New York
10022, U.S.

And
BJ'S WHOLESALE CLUB, INC.
350 Campus Drive
Marlborough, MA 01581

PHILADELPHIA COUNTY
    COURT OF COMMON PLEAS

# COMPLAINT IN CIVIL ACTION

### *PRODUCTS LIABILITY, CONSUMER PROTECTION, NEGLIGENCE*

### THE PARTIES

1.    Plaintiff is a citizen and resident of Philadelphia, PA and resides at the above captioned address.

2.    Defendant Colgate-Palmolive Co. is a Corporation which regularly and systematically does business in Philadelphia, PA.

3.    Defendant BJ's Wholesale Club Inc. is a Corporation which regularly and systematically does business in Philadelphia PA.

Case ID: 250100031

## BACKGROUND

4.      This action seeks to remedy the deceptive and misleading business practices of Colgate-Palmolive, Co. (hereinafter "Defendant Colgate Palmolive Co.") with respect to the manufacturing, marketing, and sale of Defendant Colgate Palmolive Co. CGPO's Fabuloso cleaning products (hereinafter the "Products")[1] throughout the state of PA and throughout the country and the resulting injuries caused to plaintiff by the negligent and defective design of and manufacture of Faboluloso products which plaintiff used and was caused to suffer injury.

5.      As to the particular product, Plaintiff refers to Exhibit "A", which was given to her by the purchaser, and is the only documentation available to Plaintiff concerning which particular bottle or lot the Faboluso that caused her injuries came from; but she can confirm that she suffered her injuries after the use of a Fabuloso product in January of 2023.

6.      According to Plaintiff's understanding, the particular bottles of Fabuloso were purchased by her friend and employer/principal, from BJs, and were given to Plaintiff to use while cleaning for their customers.

---

[1] The Products include, but are not limited to, Fabuloso Original Multi-Purpose Cleaner, Lavender Scent, 16.9oz + 30% Free Bonus Pack (22 FL oz); Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Lavender Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula Lavender Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula Lavender Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner, Lavender Scent, 210 FL oz; Fabuloso Professional All Purpose Cleaner & Degreaser, Lavender Scent, 1 Gallon; Fabuloso Original MultiPurpose Cleaner, Refreshing Lemon Scent, 16.9oz + 30% Free Bonus Pack (22 FL oz); Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 33.8 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 33.8 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner Bleach Alternative 2X

3

Case ID: 250100031

7.    Defendant Colgate Palmolive Co. has improperly, deceptively, and misleadingly labeled and marketed its Products to consumer stores, like BJ's, and to consumers, like Plaintiff's principal/employer, and plaintiff; by omitting and not disclosing to retailers like BJs and their consumers on the Fabuloso product packaging that consumption of those Products may increase the risk of contracting invasive infections.

8.    As described in further detail below, the Products contain *Pseudomonas aeruginosa*, which could lead to serious and life-threatening adverse health consequences.[2] The risk of serious infection from *Pseudomonas aeruginosa* is also particularly concerning for immunocompromised individuals that are highly susceptible to life threatening diseases and even death from *Pseudomonas aeruginosa* ingestion.[3] This is egregious, especially because people are spreading this bacteria all over their homes by using a product that is supposed to clean their home.

9.    Defendant Colgate Palmolive Co. specifically lists both the active and inactive ingredients of the Products on the labeling; however, Defendant Colgate Palmolive Co. fails to disclose that the Products contain, or are at risk of containing, *Pseudomonas aeruginosa*.

10.    A few representative examples of Defendant Colgate Palmolive Co. CGPO's lack of disclosure on the Products are depicted below:

---

[2] *Pseudomonas aeruginosa* is a gram-negative bacterium that causes infections in the blood and lungs and is transmitted through inhalation and skin ingestion, *see*: https://www.cdc.gov/hai/organisms/pseudomonas.html; *see also* Minh Tam Tran Thi, et al., *Pseudomonas aeruginosa Biofilms*, Int. J. Mol. Sci., 2020 Nov; 21 (22): 8671, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7698413/.

Case ID: 250100031

Concentrated Formula, Spring Fresh Scent, 56 FL oz; and Fabuloso Professional All Purpose Cleaner & Degreaser, Ocean Scent, 1 Gallon.

  

  

  

Case ID: 250100031



# Fabuloso® is powerful and safe for multi-surfaces & cleans with a long lasting scent

Use Fabuloso® on sinks, toilets, tubs, showers, floors, sealed wood surfaces, appliances, counters, windows, mirrors, walls, doorknobs and furniture

## WAYS TO USE

**WITH A SPONGE:** POUR ON A SPONGE AND CLEAN

**WITH A BUCKET:** MIX 1/8 CUP IN A GALLON OF WATER

No visible residue, no rinsing required

**CAUTION:**
MAY IRRITATE EYES. KEEP OUT OF REACH OF CHILDREN. DO NOT SWALLOW. DO NOT HEAT. DO NOT SPRAY. Use in a well-ventilated area. Do not mix with other household cleaners to avoid irritating fumes.

**FIRST AID: IF INHALED:** Move to fresh air.
**IF IN EYES:** Remove contact lenses. Immediately rinse eyes with water for 15 minutes. If irritation persists, contact a physician.
**IF SWALLOWED:** Rinse mouth, and then drink 1-2 glasses of water. Contact a poison control center or a doctor immediately.

**MADE JOYFULLY WITH:** Water, Sodium Dodecylbenzenesulfonate, Fragrance, C9-11 Alketh-8 or Deceth-8, Sodium C10-16 Alketh Sulfate or Sodium Laureth Sulfate, Citric Acid, Glutaral, Colorants. Contains fragrance allergen(s).

°as non-concentrated Fabuloso Original
1 2X Concentrated Formula = 2 Non-Concentrated Formula
†To learn more, visit www.colgatepalmolive.com/responsibly-made

**RESPONSIBLY MADE†**

**SAVE WATER** www.colgate.com/savewater

**smartlabel®** app enabled

**100% BIODEGRADABLE ACTIVE INGREDIENTS**

Dist. by:
**COLGATE-PALMOLIVE** COMPANY
New York, NY 10022 U.S.A.

PS0040869

1-800-443-0602
www.fabuloso.com

0  35000 53096  7

6

Case ID: 250100031

11.    *Pseudomonas aeruginosa* is recognized to be an incredibly dangerous and life-threatening substance, specifically for immunocompromised individuals, and especially in the context of inhalation and skin ingestion.[3]

12.    Insofar as *Pseudomonas aeruginosa* made its way into Defendant Colgate Palmolive Co. CGPO's Products on purpose, it should have been listed on the Products labeling. Insofar as it made its way into the Products by accident, it follows that it was due to poor manufacturing processes by either Defendant Colgate Palmolive Co. and/or their agents.  Further evidencing this fact, Defendant Colgate Palmolive Co. has issued a recall for the Products.[4]

13.    Consumers like the Plaintiff trust manufacturers such as Defendant Colgate Palmolive Co. to sell products that are safe and free from harmful known substances, including *Pseudomonas aeruginosa*.

14.    Plaintiff certainly had a reasonable expectation in that the cleaning products she used would not contain, or risk containing, any knowingly harmful substances.

15.    Unfortunately for Plaintiff, the cleaning products she used did contain *Pseudomonas aeruginosa or a similar harmful substance.*

16.    Defendant Colgate Palmolive Co. has used and is using a marketing and advertising campaign that omits from the ingredients lists that the Products include *Pseudomonas aeruginosa.*

---

[3] *See* https://www.blf.org.uk/support-for-you/pseudomonas; *see also* https://www.webmd.com/a-to-zguides/pseudomonas-infection.
[4] *See https://www.fabuloso.com/recall.*

Case ID: 250100031

This omission leads a reasonable consumer to believe they are not using a product with a known bacterium when in fact they are using a product contaminated with *Pseudomonas aeruginosa*.

17.     Defendant Colgate Palmolive Co. CGPO's marketing and advertising campaign includes the one place that every consumer looks when using a product – the packaging and labels themselves.  As such, a reasonable user of the product reasonably believes that they are using a product that is safe to touch and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products.  Thus, reasonable consumers would not think that the Products contain, or are at risk of containing, *Pseudomonas aeruginosa*.

18.     Defendant Colgate Palmolive Co. CGPO's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Pseudomonas aeruginosa*, which is dangerous to one's health, well-being, and even life.

19.     Plaintiff relied on Defendant Colgate Palmolive Co. CGPO's misrepresentations and omissions of the safety of the Products when she used them in a manner that could and should be expected.

20.     By placing into the stream of commerce a product with broad use as a household cleaning item, which they knew or should have known was contaminated in such a way, without providing any sufficient warning relating to same, falls well below the level of reasonable care expected and amount to wanton and reckless disregard of known and obvious dangers.

21.     As set forth below, cleaning products that contain *Pseudomonas aeruginosa* are in no way safe to use for cleaning and are entirely worthless.

Case ID: 250100031

22.    Accordingly, Defendant Colgate Palmolive Co. CGPO's Negligent and Reckless conduct, as well as their defective design and manufacture of the products in question, along with its breach of multiple warranties, expressed and implied, all resulted in and were the proximate causes of the injuries and damages sustained by Plaintiff including pain suffering, medical expenses, disfigurement, humiliation, and distress.

23.    Defendant BJ's as a retailer who placed the Products into the stream of commerce, is likewise liable to plaintiff for the defective design and/or manufacture of the Products and breach of warranties contained therein and is likewise liable to plaintiff along with Defendant CGPO.

24.    Additionally, Defendant BJ's either knew and disregarded the fact that the products contained these harmful ingredients, and if so, its conduct was not only negligent but also reckless in that it disregarded this knowledge and sold Fabuloso products anyway, and/or should have known but failed to take notice despite reason to know of the fact that the products may contain these harmful ingredients and were perhaps mislabeled and as such failed to take reasonable steps to further investigate and/or remove the Fabuloso products from its shelves; and either way is also negligent along with CGPO for causing harm suffered by Plaintiff as more fully described below.

**FACTUAL BACKGROUND**

25.    Defendant Colgate Palmolive Co. manufactures, markets, advertises, and sells cleaning products to clean surfaces in the home and sells these products to consumer box stores like Defendant BJ's many stores who in turn sell them to consumers like plaintiff and her employer/principal who purchased the particular products in question which caused harm to Plaintiff.

Case ID: 250100031

26.     What is concerning is that many consumers, like Plaintiff use disinfecting products, akin to the Products, on a regular basis in their homes, especially to protect against the coronavirus and other diseases.[5]

27.     Accordingly, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria conscious regarding the cleanliness of their homes.  With that in mind, the cleaning products market was valued at USD 33.8 billion in 2021 and is expected to grow with a compound annual growth rate of 4.9% from 2022 to 2028.[6]

28.     Consumers have become increasingly concerned about the effects of ingredients in products that they inhale and/or touch.  Companies such as Defendant Colgate Palmolive Co. have capitalized on consumers' desire for cleaning products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

29.     Defendant CGPO took advantage of these statistics and attempted to profit from this blossoming new and growing market buy rushing its own products to market, increasing production quantity, and lowering costs, including but not limited to massive labor cuts, and other cost cutting measures; all of which, Defendant knew or should have known, would increase the risk of harmful and dangerous substances being contained in its products such that they would not be fit for use or marketing as a household cleaning product.

---

[5] https://www.reuters.com/article/us-health-coronavirus-consumer-products/cleaning-product-makers-race-to-labsto-bolster-coronavirus-claims-idUSKBN2101W1.

[6] https://www.grandviewresearch.com/industry-analysis/household-cleaners-marketreport#:~:text=Report%20Overview,4.9%25%20from%202022%20to%202028.

Case ID: 250100031

30.    As such, Defendant CGPO is liable to plaintiff for either (1)it's intentional inclusion of these harmful substances in their products and concealment of same, (2) intentional or negligent misrepresentation of the labeling and packaging and failure to warn of the risk of contamination and inclusion of harmful ingredients in their products,   and/or (3) its negligent and reckless inclusion of harmful ingredients or failing to disclose or warn of the risk of inclusion of such harmful ingredients given the nature of their recent efforts to capture and profit from a new and growing driver in this market, coupled with labor budget cuts and other profit driven incentives and programs, all while failing to account for the resulting increased need for quality assurance measures and safety precautions, brought on by the dangers associated with steep increases in production and cuts in the labor budget; as well as the overall negligent design and manufacture of the product and misrepresentations and failures to warn within its labeling and packaging.

31.    Because consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Pseudomonas aeruginosa*, especially at the point of sale, and therefore must and do rely on Defendant Colgate Palmolive Co. to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

32.    The Products' packaging does not identify *Pseudomonas aeruginosa*.  Indeed, *Pseudomonas aeruginosa* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Pseudomonas aeruginosa* in the Products.  This leads reasonable consumers to believe the Products do not contain and are not at risk of containing dangerous chemicals like *Pseudomonas aeruginosa*.

33.    Further, consumers, such as Plaintiff, do not expect Products sold by reputable brands to have *Pseudomonas aeruginosa.*

Case ID: 250100031

34.     However, the Products contain, or are at risk of containing, *Pseudomonas aeruginosa*.

35.     Specifically, Pseudomonas aeruginosa is a gram-negative bacterium that can survive on inanimate surfaces for months.[7]  Moreover, Pseudomonas aeruginosa can be transmitted through airborne exposure and skin-to-skin contact.[8]  Consequently, consumers, like Plaintiff and are at risk by using Defendant Colgate Palmolive Co. CGPO's Products as the Products are used to clean surfaces, which allows Pseudomonas aeruginosa to infect individuals by either being in close proximity to the applied surface or by touching the applied surface.

36.     Moreover, twenty-first century research has confirmed that *Pseudomonas aeruginosa* inhalation and exposure can cause death to immunocompromised individuals.[9]

37.     This is why *Pseudomonas aeruginosa* in Defendant Colgate Palmolive Co. CGPO's Products is particularly concerning, as also evidenced by Defendant Colgate Palmolive Co. recalling the Products.[11]

---

[7] Axel Kramer, *How long do nosocomial pathogens persist on inanimate surfaces? A systematic review*, BMC Infect Dis., 2006; 6:130, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1564025/

[8] S. Sudharsanam, *Airborne Pseudomonas species in Healthcare Facilities in a Tropical Setting*, Curr Health Sci J., 2015 Apr-Jun; 41(2): 95-103, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6201198/; *see also* https://www.endosan.com/pseudomonas-aeruginosa-causes-symptoms-transmission-and-infection-prevention/.

[9] Yohei Migiyami, et al., *Pseudomonas aeruginosa Bacteremia among Immunocompetent and Immunocompromised Patients: Relation to Initial Antibiotic Therapy and Survival*, Jpn J Infect. Dis., 2016; 69(2):91-6, accessible at: https://pubmed.ncbi.nlm.nih.gov/26073727/. [11] *See* https://www.fabuloso.com/recall.

Case ID: 250100031

38.     Defendant Colgate Palmolive Co. is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing cleaning products for many years, including producing and manufacturing the Products.

39.     Defendant Colgate Palmolive Co. is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Pseudomonas aeruginosa* contamination.

40.     Accordingly, Defendant Colgate Palmolive Co. possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and her coworkers.

41.     Defendant Colgate Palmolive Co. has a duty to provide (1) consumers, (2) their principals and agents, as well as (3) other foreseeable users of its products, all of which include Plaintiff, with accurate information about the contents of the Products to reduce risk of injury.

42.     Defendant Colgate Palmolive Co. CGPO's misrepresentation and omission was material and intentional because it is surely a reality that consumers and users of a cleaning product would be particularly concerned with what is in the products that they might surely inhale and touch as a consequence of household cleaning.  Consumers such as Plaintiff are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients.  Defendant Colgate Palmolive Co. knows that if they had not omitted that the Products contained *Pseudomonas aeruginosa*, then Plaintiff and other consumers would not have purchased the Products at all; and surely would not have had the ability to break the market of common household usage like it had done as a result of its deception.

13

Case ID: 250100031

43.    Plaintiff reasonably relied to her detriment on Defendant Colgate Palmolive Co. CGPO's misleading representations and omissions.

44.    Defendant Colgate Palmolive Co. CGPO's misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff.

45.    In making misleading, and deceptive representation and omission described herein, Defendant Colgate Palmolive Co. knows and intended that consumers would pay a premium for a product marketed as having the ability to clean without the bacterium *Pseudomonas aeruginosa* over comparable products not so marketed.

46.    As an immediate, direct, and proximate result of the conduct of Defendant Colgate Palmolive Co. CGPO's negligent and reckless conduct, along with its false, misleading, and deceptive representations and omissions and labels which failed to adequately warn individuals of the harmful substances in its Products Plaintiff sustained serious injuries to her epidermis, nervous system, immune system, hand and fingers, including burns, rashes, and scars of various forms, itchiness, swelling, wrinkling, dryness and other symptoms, which have resulted in ongoing disfigurement, humiliation, discomfort, pain, and distress, and have caused her to incur various medical expenses and may result in further expenses into the future as well as ongoing limitations and suffering as described.

47.    Had Defendant Colgate Palmolive Co. not made the false, misleading, and deceptive representation and omissions, the Products would not have been successful in breaching success in the common household use market, and would not have maintained competitive with other competitors who sold their products for higher prices but did not contain the harmful ingredients as described.  As such, Defendant Colgate Palmolive Co.'s manipulated the "household" use

Case ID: 250100031

market with harmful, not for household use products and gained market share through its ability to charge less for the contaminated products, the contamination of which they concealed through the deception aforesaid and described herein.

48.    Had Defendant Colgate Palmolive Co. not deceived the consumers in the household cleaning product market into thinking their product compared with other more expensive brands in the same market, Defendant Colgate Palmolive Co.'s product would not have shipped to BJs and made available for purchase by consumers, such as Plaintiff's coworker/employer who then provided the product to Plaintiff for use in connection with her part time employment providing cleaning services. As such, she would have never encountered the product, as BJs wouldn't have sold it, and/or her employer/coworker wouldn't have purchased it, and/or plaintiff herself would have known not to use it had the harmful ingredients within it been evident in the product labeling.

### FACTS LEADING TO PLAINTIFF'S INJURIES

49.    In January of 2023, after using certain "Fabuloso cleaning products" in connection with her part time job performing light residential and commercial cleaning services, Plaintiff began experiencing painful itching, burning, and irritation on her hands and fingers.

50.    As the weeks went on, she continued to experience severe symptoms including an ongoing and persistent rash scattered about both her hands as well as painful itching, cracking, wrinkling, and excessive dryness, which she initially tried to resolve with home remedies, but ultimately resulted in the need for medical attention and care, and as such, Plaintiff was seen at the Tower Health Urgent Care/Emergency Room on 2/24/23 wherein she explained that she had her symptoms had remained as described since January of 2023.

51.    Plaintiff was given medications for treating what was at the time described as a "reaction" only because at that time, the medical community was unaware of the complications and hazards

Case ID: 250100031

associated with the Products sold by Defendant Colgate Palmolive Co. containing the harmful bacteria as previously set forth above.

52.     As months went by with only conservative methods of treatment including topical triamcinolone, she received only minor relief and the rash remained itchy and painful and she continued to express concern and anxiety and distress to her medical providers about her fear of not being able to return to work as a Casino Cards Dealer due to her distress and humiliation regarding the disfigured appearance of her hands considering how they are highlighted and focused on in the world of casino card dealing.

53.     Had Defendant Colgate Palmolive Co. not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, BJs wouldn't have carried it, Plaintiff's employer wouldn't have purchased it for us, and Plaintiff wouldn't have used it or certainly would have taken additional precaution and/or limited her exposure to it.

54.     Defendant Colgate-Palmolive Co is a New York corporation with its principal place of business in New York, New York.  Colgate-Palmolive Co. is one of the largest manufacturers of cleaning products in the United States and responsible for producing some of the most popular over-the-counter drug products at frequented pharmacies, including the Products.

55.     Defendant Colgate Palmolive Co. manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant Colgate Palmolive Co. created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

56.      As detailed at length in this Complaint, Defendant Colgate Palmolive Co. orchestrated deceptive marketing and labeling practices.  Defendant Colgate Palmolive Co.'s aka CGPO's customers were uniformly impacted by and exposed to this misconduct resulting in CGPO's ability

Case ID: 250100031

to sell its harmful products in mass quantities within the residential and commercial cleaning product market, which in turn enabled the product to be available for purchase for resale to end users by BJ's and thus making it available to persons like Plaintiff who would use it as expected, i.e. to clean.

**COUNT I**
**VIOLATION OF THE UFTPA**
**Plaintiff vs. all Defendants**

57.    Plaintiff incorporates all paragraphs as though fully set forth at length herein.

58.    Pursuant to 73 P.S. § 201-1, et seq,. (PA Unfair Trade Practices Act ("UFTPA")) it is unlawful for Defendant Colgate Palmolive Co. to market its product in the ways that it did as aforesaid, including, but not specific limited to the following particulars; promotion of advertising and other representations that confuse or mislead consumers including end users as to the actual contents contained within its products including the source and origination of the goods, ingredients or uses they do not have, and representations regarding the claim that the goods are of a particular standard when they are not. The UFTPA also makes it an unfair or deceptive act or practice to engage in a "bait and switch" – advertising goods or services with intent not to sell them as advertised, or advertising them with intent not to supply the reasonably expectable public demand. CGPO's conduct, as aforesaid, violated each of these particular sections in the UFTPA.

59.    The conduct of Defendant CGPO, as alleged herein, constitutes recurring, "unlawful" deceptive acts and practices in violation of the UFTPA.

60.    CGPO's improper consumer-oriented conduct—including failing to disclose that the Products have *Pseudomonas aeruginosa*—is misleading in a material way in that it, *inter alia*, induced the purchase of Defendant Colgate Palmolive Co. CGPO's Products making it available

17

Case ID: 250100031

for use in the commercial and residential like cleaning industry setting, resulting in Plaintiff's coming into contact with it.  Defendant Colgate Palmolive Co. made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

61.     As a result of CGPO's recurring, "unlawful" deceptive acts and practices, Plaintiff is entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and any other relief deemed appropriate by the Courts well as interest, and attorneys' fees and costs.

62.     Because Plaintiff was an intended user of the household product, she has a direct claim under the UTPCA, although she did not purchase the product herself, she is a third party beneficiary as an employee/agent of the person who purchased it for the specific purpose for plaintiff to use it and benefit from.

**WHEREFORE**, Plaintiff, respectfully requests damages in her favor and against defendants, joint and severally, for an amount in excess of fifty thousand dollars plus treble damages, punitive damages, damages for delay, costs, attorney's fees and any other damages deemed appropriate by the Court.

### COUNT II
### NEGLIGENCE
### Plaintiff v. All Defendants

63.     Plaintiff incorporates all paragraphs as though fully set forth at length herein.

64.     Defendant CGPO failed to use reasonable care expected of a similarly situated company such as CGPO in its design and manufacture of the products and the specific methods and process relating to same, including but not limited to designing and utilizing and implementing reasonably effective quality assurance measures to assure that potential harmful ingredients are not contained in the products ultimately placed on the market for purchase and use; and/or failing to utilize reasonable care in the development of adequate and sufficient warnings to warn of the risks and/or

Case ID: 250100031

warn of the need to handle with certain precaution or specific care in order to minimize the risk of injury or harm, i.e. like the use of gloves or masks or other personal protective equipment, and/or information regarding exposure limits, minimum square footage space for the room where it is to be used, ventilation needs, etc.

65.    Because of the ingredients it knew were utilized in making its products, and the specific methods, and process for which they were created, defendant CGPO knew or had reason to know and should have known that their products likely would or might contain harmful and dangerous substances which were not listed as ingredients on its labeling nor was any warning given regarding same on its labeling or with its packaging.

66.    As such, despite this knowledge, or despite having reason to know, Defendants failed to account for this risk and failed to create, design, implement quality assurances measures, safety checks, precautions, and other methods or procedures for safe guarding against this risk and ensuring that the final product was thoroughly tested before being placed into the stream of commerce for purchase by box stores like BJ's who would in turn sell them to end users and consumers like plaintiff.

67.    BJ's either knew, or should have known that defendant CGPO's products contained these harmful ingredients or likely would, and that CGPO failed to take reasonable steps to account for this risk, and failed to ensure proper testing, and quality assurance, and labeling and warnings of its products and chose to purchase the products anyway without doing any testing or evaluation of its own, and without consulting with CGPO in any reasonable way to determine if CGPO did any of its own safety testing, quality assurance, or precautionary testing of its own prior to being shipped to BJs.

Case ID: 250100031

68.    Nonetheless BJ's placed the products on their shelves for purchase by persons like plaintiff's employer/principal whom then provided it to plaintiff for use.

69.    As such both defendants are negligent for failing to use reasonable care prior to placing the products into the stream of commerce despite knowing or having reason to know that the products did or likely would contain harmful ingredients which were not listed on the labels or with the packaging and which would cause serious and harmful injuries to persons such as plaintiff.

**WHEREFORE**, Plaintiff, respectfully requests damages in her favor and against defendants, joint and severally, for an amount in excess of fifty thousand dollars plus treble damages, punitive damages, damages for delay, costs, attorney's fees and any other damages deemed appropriate by the Court.

<u>**COUNT III**</u>
<u>**Breach of Contract and Warranties**</u>
<u>**Plaintiff vs. all Defendants**</u>

70.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.    Defendant Colgate Palmolive Co. provided Plaintiff with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Pseudomonas aeruginosa*.

72.    Defendant Colgate Palmolive Co. omitted that the Products contain a known bacterium from its ingredients labeling. This omission would lead reasonable consumers did not contain a known bacterium, when in fact, the Products were contaminated with *Pseudomonas aeruginosa* as stated herein.

Case ID: 250100031

73. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

74. These affirmations of fact became part of the basis for the bargain and were material to the purchase of the Product, upon which Plaintiff was the intended third party beneficiary.

75. As such, Plaintiff, and the purchaser, reasonably relied upon Defendant Colgate Palmolive Co. CGPO's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy and use Defendant Colgate Palmolive Co. CGPO's Products from a BJ's store.

76. Defendants knowingly breached the express warranties by including *Pseudomonas aeruginosa* in the Products purchased/used by Plaintiff without properly notifying her or her principal of the inclusion of the harmful bacteria or likelihood thereof, in the Products.

77. Within a reasonable time after it knew or should have known, Defendant Colgate Palmolive Co. did not change the Products' label to include *Pseudomonas aeruginosa* in the ingredients list and instead continued to sell more of its products which it knew were likely contaminated.

78. Had Defendants taken reasonable steps to cure this problem of contamination or likely contamination, then defendants should have, would have and could have removed the products that contained or might contain those harmful substances from the market, and notified retailers such as BJs' but instead; defendants chose to ignore the known hazard and continued to deny it only to later finally agreeing to a recall of the product.

79. Had Defendant used reasonable care, they would have acted in a more expeditious and efficient manner to recall the products and inform retailers such as BJ's and others, including end users of the potential health hazards; then defendants could have prevented Plaintiff's use of

Case ID: 250100031

the contaminated cleaning products in January of 2023, but due to defendants' unreasonable delays and initial refusal to accept accountability, the products remained on shelves and ultimately wound up into the hands of and for use by, plaintiff.

80.     As a direct and proximate result of Defendant Colgate Palmolive Co. CGPO's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

WHEREFORE, Plaintiff, respectfully requests damages in her favor and against defendants, joint and severally, for an amount in excess of fifty thousand dollars plus treble damages, punitive damages, damages for delay, costs, attorney's fees and any other damages deemed appropriate by the Court.

**COUNT IV**
**PRODUCTS LIABILITY, DEFECTIVE DESIGN, MANUFACTURE, FAILURE
TO PROVIDE ADEQUATE WARNINGS
Plaintiff vs. all Defendants**

81.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.     Defendant CGPO as the corporation that designed and manufactured the product, is liable to plaintiff for placing into the stream of commerce the Product in question which contained a harmful bacteria which defendant knew or should have known was contained therein or would likely be contained therein by virtue of its knowledge of its own used ingredients, production efforts, and manufacturing processes, and therefore knew of the increased risk and apparent reasonable need for the use of testing, quality assurance, and other methods and procedures which were then readily available, and commonly used, but which defendants chose or

Case ID: 250100031

otherwise failed not to use; despite the fact that such use would have prevented contaminated products from reaching the end user consumers such as plaintiff.

83.     As described above, the Product was defectively designed, manufactured, sold and maintained by the Defendant and reached its ultimate consumer in a manner that was substantially unchanged from that in which it left the Defendant's possession.

84.     The Product was being used by the Plaintiff for its intended purpose at the time she was injured in January of 2023.

85.     The Defendant had access to alternative ingredients, alternative processes, and alternative methods for minimizing the risk of contamination, and for checking and testing for the risk of contamination, and for performing quality assurance measures for ensuring that the final products were not contaminated and had available and economically feasible methods for which they could have tested their products, and/or the design and manufacturing process of same, but failed to utilize the readily available methods which would have prevented contaminated products from reaching store shelves.

86.     Despite the available alternative designs, including different ingredients, processes, and including utilizing additional or more skilled labor, defendants chose purposely not to do so, and in turn then failed to use reasonable care to test for the added contamination risk their failed design had caused.

87.     Alternatively, if the harmful bacteria was an inadvertent bi product of the known ingredients, then the design of the product was nonetheless defective in that alternative ingredients were available which would have accomplished the same purpose without the risk of the unintended harmful bi product, and/or the product was defective in that the product contained ingredients which were known to cause risk of harmful bi products thus requiring the need for

Case ID: 250100031

additional safety precautions and testing, none of which were adequately performed; thus constituting a defective design.

88.    Alternatively, if the aforesaid bacteria was purposefully and intentionally included or was an intended bi product of the ingredients, then Defendant's design is per se defective in that such bacteria is patently unsafe, harmful, and alternatives existed so that cleaning could be accomplished without such risk of harm, and without the risk of the bi product being caused.

89.    Additionally, if the harmful bacteria was inadvertently included due to some none design external source of contamination during the manufacturing process, then the defect is a manufacturing defect; if the inadvertent inclusion is caused instead by the overall design of the manufacturing processes and failures with respect to the lack of safeguards and precautions testing and quality assurance, then it is at the same time a design defect.

90.    Either way, in addition to the design and manufacturing defects described, the product is likewise defective in that it fails to contain adequate warnings regarding the existence of harmful substances in the products, or risk of the existence of same, and the need to utilize proper safeguards and precautions when using same, such as minimum room sizes for use, use of personal protective equipment, gloves, importance of washing hands, dangers of inhalation, ppe mask use, ventilation importance, and particular risks associated with prolonged exposure and use over certain specific periods of time, and particular risks associated with use by persons with certain medical conditions, including those immunocompromised.

91.    The unreasonably dangerous and defective condition of the Product was the direct and proximate cause of the Plaintiff's injuries and damages as previously set forth above.

92.    In designing and manufacturing the Product, Defendant exhibited the following failures:

> a    Failing to ensure that any warnings the product did contain were accurate and adequate despite having extensive knowledge

Case ID: 250100031

of the risks associated with the Product;

b    Failing in their obligation to provide adequate and clinically relevant information, and data and warnings regarding the Product and/or failing to warn that there existed safer and more or equally effective alternative products;

c    Failing to conduct post market safety surveillance and report that information to persons likely to come in contact with the product;

d    Failing to perform pre market safety evaluations and testing to determine whether or not safer alternatives existed;

e    Failing to include adequate warnings and/or providing adequate and clinically relevant information and data that would alert persons likely to come into contact with the product on what actions to take and not to take and when to take when using and/or applying and/or working near the unreasonably dangerous Product;

f    Failing to review all adverse event information and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or exposure from the product and/or failing to re design the product after noticing same and/or failing to recall or repair the product after learning of the original design failures;

g    Failing to provide adequate post-marketing warnings and instructions after they knew or should have known of the significant risks associated with the product and/or the risks associated with the label's instructions as to what actions to take, and not to take, and when to take them when using, applying, or working in or around the product;

h    Failing to periodically review all relevant literature regarding methyl bromide and failing to report data, regardless of the Defendants' perceived degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy, or safety of Product;

Case ID: 250100031

i   Failing to act as reasonably prudent manufacturers and distributors in advertising, analyzing, assembling, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing the Product;

j   Failing to use ordinary care in advertising, analyzing, assembling, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing the Product so as to reveal and communicate to consumers, Plaintiff's employers, and Plaintiff of the risks associated with the Product, including what actions to take, and not to take, and when to take them while working around same;

k   Failing to use ordinary care and/or failing to implement a plan in its design and/or manufacturing process for the quick and efficient recall and notification of same to retailers such as BJ's and other persons who were likely end users or consumers so that the products would be quickly removed from the shelves once an efficient review of the post market data was performed and instead delaying acceptance of any responsibility and/or failing to have a method it is manufacturing design and process for accomplishing a post market review of adverse reporting data so as to quickly determine the need for a recall.

93.   As a direct result of defendant CGPO's design and manufacture of the Product(s) Plaintiff was caused those damages and injuries as aforesaid above.

94.   As such CGPO is liable to Plaintiff in strict liability.

95.   Likewise, Defendant BJ's, by virtue of having placed CGPO's Products into the stream of commerce, is also liable to Plaintiff in strict liability for the reasons aforesaid.

**WHEREFORE**, Plaintiff, respectfully requests damages in her favor and against defendants, joint and severally, for an amount in excess of fifty thousand dollars plus treble

Case ID: 250100031

damages, punitive damages, damages for delay, costs, attorney's fees and any other damages deemed appropriate by the Court.

Respectfully submitted,
**DEFINO LAW ASSOCIATES, P.C.**
_____/s/_____12/30/24___
NICHOLAS L. PALAZZO, ESQ.

**<u>VERIFICATION</u>**

I, Nicholas Palazzo, attorney for Plaintiff herein, hereby confirm and affirm that the facts contained herein are true and correct to the best of my knowledge information and belief. I further affirm that my client, Patricia Bevins, lacks firsthand knowledge concerning many of the facts contained herein and as such has relied on my investigation and counsel concerning her claims. As such, verification from her is not seemingly appropriate per the rules of civil procedure, and instead, the undersigned is verifying this Complaint and if deemed necessary, Plaintiff can supplement this verification with a limited verification verifying the minimal facts upon which she does have personal knowledge.

Respectfully Verified,

_____/s/_____
NICHOLAS L. PALAZZO

Case ID: 250100031